## UNITED STATES *v.* YELLOW CAB CO.

NO. 218.

Argued December 6, 1950.—Decided February 26, 1951.

*James L. Morrisson* argued the causes for the United States. With him on the briefs were *Solicitor General Perlman* and *Paul A. Sweeney*. *Assistant Attorney General Morison* was also on the brief in No. 218. *Acting Assistant Attorney General Clapp* was also on the brief in No. 204.

*Frank F. Roberson* argued the cause for petitioner in No. 204. With him on the brief were *George D. Horning, Jr.* and *Joseph J. Smith, Jr.*

*Bernard G. Segal* argued the cause for respondent in No. 218. With him on the brief were *Wm. A. Schnader* and *James J. Leyden.*

MR. JUSTICE BURTON delivered the opinion of the Court.

The question presented is whether the Federal Tort Claims Act[1] empowers a United States District Court to require the United States to be impleaded as a third-party defendant and to answer the claim of a joint tort-feasor for contribution as if the United States were a private individual. For the reasons hereinafter stated, we hold that it does.

### No. 218—YELLOW CAB CASE.

December 1, 1946, in Philadelphia, Pennsylvania, four passengers in a taxicab were injured by a collision between the cab and a United States mail truck. Claiming diversity of citizenship and charging negligence on the part of the cab driver, they sued his employer, the Yellow Cab Company, in the United States District Court. By leave of court, the company impleaded the United States as a third-party defendant and charged that the negligence of the mail truck driver made the United States liable for all or part of the passengers' claims against the company. The United States moved for its dismissal as a third-party defendant on the ground that the Federal Tort Claims

[1] Title IV of the Legislative Reorganization Act of 1946, 60 Stat. 812, 842–847, 28 U. S. C. (1946 ed.) §§ 921–946. Under the revision of the Judicial Code, effective September 1, 1948, 62 Stat. 869, *et seq.*, these provisions now appear, with slight modifications, in 28 U. S. C. (1946 ed., Supp. III) §§ 1291, 1346 (b), 1402 (b), 1504, 2110, 2401 (b), 2402, 2411, 2412 and 2671–2680.

Act does not authorize suits against it on derivative claims. The motions were denied. The court tried the cases together, without a jury, and rendered judgments against the company totaling $7,800, but in favor of the company against the United States for one-half of the several amounts awarded the passengers. Motions by the United States to set aside the judgments against it were denied and the Court of Appeals for the Third Circuit affirmed those denials. *Howey* v. *Yellow Cab Co.*, 181 F. 2d 967. On petition of the United States, we granted certiorari after the *Capital Transit* case, *infra,* had been decided the other way. 340 U. S. 809.

## No. 204—CAPITAL TRANSIT CASE.

August 4, 1947, in the District of Columbia, a passenger on a streetcar was injured by a collision between it and a jeep operated by a United States soldier acting within the scope of his duties. The passenger, charging negligence, sued the Capital Transit Company in the District Court for the District of Columbia. By leave of court, the company impleaded the United States as a third-party defendant, charging that the soldier's negligence was the sole or a contributing cause of the collision and asking judgment against the United States for a contributable portion of any sum which might be awarded against the company in favor of the passenger. In response to motions by the United States, the court entered a final judgment dismissing the third-party complaint on the ground that it failed to state a claim upon which relief could be granted against the United States. *Stradley* v. *Capital Transit Co.*, 87 F. Supp. 94. The Court of Appeals for the District of Columbia Circuit affirmed. 87 U. S. App. D. C. ——, 183 F. 2d 825. It reviewed the opinion in *Howey* v. *Yellow Cab, supra,* and disagreed with it. See also, *Sappington* v. *Barrett,* 86 U. S. App. D. C. 334, 182 F. 2d 102. On petition of the company, we

granted certiorari because of the conflict of decisions and the importance of the issue in the application of the Federal Tort Claims Act. 340 U. S. 808.

### The Government Has Consented To Be Sued for Contribution.

In the *Yellow Cab* case the court below concluded that under the law of Pennsylvania a private individual would be liable to his joint tort-feasor for contribution,[2] and that the United States, through the Federal Tort Claims Act, had consented to be sued and would be liable, under the same circumstances, in the same manner and to the same extent. In the *Capital Transit* case, while the court below held that the United States could not be impleaded as a third-party defendant, it refrained from deciding whether, in a separate action, the company might enforce a right to contribution against the United States. Accordingly, although the court affirmed the dismissal of the third-party complaint against the United States, it did so without prejudice to the maintenance of a separate action for contribution by the joint tort-feasor. 87 U. S. App. D. C. at ——, 183 F. 2d at 830.[3]

The Government now contends, in both cases, that it has not consented to be sued for contribution claimed by a

---

[2] Pa. Laws 1939, No. 376; Purdon's Pa. Stat. Ann., Tit. 12, § 2081 (Cum. Pocket Part 1949); and see *Goldman* v. *Mitchell-Fletcher Co.*, 292 Pa. 354, 141 A. 231; *Fisher* v. *Diehl*, 156 Pa. Super. 476, 482, 40 A. 2d 912, 916. For the District of Columbia, see *Knell* v. *Feltman*, 85 U. S. App. D. C. 22, 174 F. 2d 662; *George's Radio* v. *Capital Transit Co.*, 75 U. S. App. D. C. 187, 126 F. 2d 219. No question has been raised as to the applicability of the law of Pennsylvania and that of the District of Columbia in the respective cases as the law under which the liability of the United States is to be determined if its immunity from suit has been waived.

[3] The District Court went further. It stated that it found "nothing within the letter of the statute constituting a waiver of immunity in respect of claims against the United States for contribution in actions in tort." 87 F. Supp. at 95.

joint tort-feasor, even in a separate action.   We therefore discuss that issue first.

The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language.[4]  It unquestionably waives it in favor of an injured person.   It does the same for an insurer whose claim has been subrogated

---

[4] "SEC. 410. (a) Subject to the provisions of this title, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred . . . sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.   Subject to the provisions of this title, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, except that the United States shall not be liable for interest prior to judgment, or for punitive damages.   Costs shall be allowed in all courts to the successful claimant to the same extent as if the United States were a private litigant, except that such costs shall not include attorneys' fees. . . ."   60 Stat. 843–844, 28 U. S. C. (1946 ed.) § 931 (a).

A proviso as to death cases, included in this section by 61 Stat. 722, as of August 2, 1946, is not material here.

Effective September 1, 1948, the above provisions were repealed and their substance, material here, was largely reenacted in 28 U. S. C. (1946 ed., Supp. III) §§ 1346 (b), 1402 (b), 2402 and 2674.   We rely on the meaning of the language in the original Act and read the revised language as carrying it out.   Insofar as the changes are material here, the reviser's note merely stated that "Minor changes were made in phraseology."   H. R. Rep. No. 308, 80th Cong., 1st Sess. A123.   Furthermore, the acts complained of in the instant cases occurred before the revised code became effective and the parties treat the original language as applicable.   "Any rights or liabilities now existing under such [repealed] sections or parts thereof shall not be affected by this repeal."   62 Stat. 992, effective September 1, 1948.

to his.  *United States* v. *Aetna Surety Co.*, 338 U. S. 366. The issue here is whether the Act also covers claims for contribution which would be due from the Government if the Government were a private individual.

On its face the Act amply covers such consent.  Section 410 (a) waives immunity from suit on—

> "*any claim* against the United States, for money only, accruing on and after January 1, 1945, *on account of* damage to or loss of property or *on account of* personal injury or death *caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred.*  Subject to the provisions of this title, *the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances,* except that the United States shall not be liable for interest prior to judgment, or for punitive damages. . . ."  (Emphasis supplied.)  60 Stat. 844, 28 U. S. C. (1946 ed.) § 931 (a).

The words "*any claim* against the United States . . . on account of personal injury*" (emphasis supplied) are broad words in common usage.  They are not words of art.  Section 421 lists 12 classes of claims to which the waiver shall not apply, but claims for contribution are not so listed.[5]

This Act does not subject the Government to a previously unrecognized type of obligation.  Through hundreds of private relief acts, each Congress for many years

---

[5] "Where a statute contains a clear and sweeping waiver of immunity from suit on all claims with certain well defined exceptions, resort to that rule [of strict construction] cannot be had in order to enlarge

has recognized the Government's obligation to pay claims on account of damage to or loss of property or on account of personal injury or death caused by negligent or wrongful acts of employees of the Government. This Act merely substitutes the District Courts for Congress as the agency to determine the validity and amount of the claims. It suggests no reason for reading into it fine distinctions between various types of such claims.

Despite the broad language of the Act, the Government has reviewed its legislative history in an attempt to restrict its scope. Most of that history relates to periods prior to the 2d Session of the 79th Congress at which the Act was passed. After more than 20 years of consideration, the subject was then presented to Congress in a new aspect.[6] The bill became Title IV of the Legislative Reorganization Bill of 1946 at a moment when the over-

---

the exceptions." *Employers' Fire Ins. Co.* v. *United States,* 167 F. 2d 655, 657. See also, *Old Colony Ins. Co.* v. *United States,* 168 F. 2d 931, 933.

The significance of the failure to list a claim for contribution as excepted from the waiver is emphasized by such exceptions as the following:

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid . . . .

. . . . .

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. . . ." 60 Stat. 845, 846, 28 U. S. C. (1946 ed.) § 943 (a) and (h), see 28 U. S. C. (1946 ed., Supp. III) § 2680 (a) and (h).

[6] The only Act previously adopted in this field was the Small Tort Claims Act of December 28, 1922. It merely authorized heads of executive departments and independent establishments to give summary relief on "any claim accruing after April 6, 1917, on account of damages to or loss of privately owned property where the amount of the claim does not exceed $1,000, caused by the negligence of any officer or employee of the Government acting within the scope of his employment. . . ." 42 Stat. 1066, 31 U. S. C. (1940 ed.) § 215; see

whelming purpose of Congress was to make changes of procedure which would enable it to devote more time to major public issues.[7] The reports at that session omitted previous discussions which tended to restrict the scope of the Tort Claims bill. The proceedings emphasized the benefits to be derived from relieving Congress of the pressure of private claims. Recognizing such a clearly defined breadth of purpose for the bill as a whole, and the general trend toward increasing the scope of the waiver by the United States of its sovereign immunity from suit, it is inconsistent to whittle it down by refinements.[8]

---

60 Stat. 843, 28 U. S. C. (1946 ed.) § 921, 28 U. S. C. (1946 ed., Supp. III) § 2672.

Many bills to enlarge the waiver of immunity were introduced but not passed. See *Brooks* v. *United States,* 337 U. S. 49, 51; Gottlieb, The Federal Tort Claims Act—A Statutory Interpretation, 35 Geo. L. J. 1–8 (1946–1947).

[7] The Special Senate Committee on the Organization of Congress, which reported the bill, referred to this Title IV as follows: "It is complementary to the provision in title I banning private bills and resolutions in Congress, leaving claimants to their remedy under this title." S. Rep. No. 1400 (on S. 2177), 79th Cong., 2d Sess. 29. That provision was:

"PRIVATE BILLS BANNED

"SEC. 131. No private bill or resolution (including so-called omnibus claims or pension bills), and no amendment to any bill or resolution, authorizing or directing (1) the payment of money for property damages, for personal injuries or death for which suit may be instituted under the Federal Tort Claims Act, or for a pension (other than to carry out a provision of law or treaty stipulation); (2) the construction of a bridge across a navigable stream; or (3) the correction of a military or naval record, shall be received or considered in either the Senate or the House of Representatives." 60 Stat. 831.

[8] The broad lines of the trend in waiving the immunity of the United States from suit appear from the Court of Claims Act of Feb. 24, 1855, 10 Stat. 612, see 28 U. S. C. (1946 ed., Supp. III) § 171, *et seq.;* Tucker Act of Mar. 3, 1887, 24 Stat. 505, see 28 U. S. C. (1946 ed., Supp. III) § 1491, *et seq.;* Patent Infringement Act of June 25, 1910, 36 Stat. 851, as amended, 35 U. S. C. (1946 ed.) § 68; Suits in

Of course there is no immunity from suit *by* the Government to collect claims for contribution due it from its joint tort-feasors. The Government should be able to enforce this right in a federal court not only in a

Admiralty Act of Mar. 9, 1920, 41 Stat. 525, as amended, 46 U. S. C. (1946 ed.) § 741, *et seq.;* Small Tort Claims Act of Dec. 28, 1922, 42 Stat. 1066, see 28 U. S. C. (1946 ed., Supp. III) § 2672; Public Vessels Act of Mar. 3, 1925, as amended, 43 Stat. 1112, 46 U. S. C. (1946 ed.) § 781, *et seq.* See also, Shumate, Tort Claims Against State Governments, 9 Law and Contemp. Prob. (1942) 242; Constitutional and Statutory Provisions of the States, Vol. VIII, Settlement of Claims Against the States, published by The Council of State Governments (1950).

The views expressed in the earlier legislative history of this particular bill lose force by their omission from the 1946 report and discussion. However, the following comment made in 1942 by the House Committee on the Judiciary, then in charge of the bill, is of some significance for the reason that it relates to the effect of the omission of a certain provision, and there was no occasion to refer again to that omission in 1946:

"Section 403 of the Senate bill provided for proportionate liability of the United States where a Government employee was a joint tort-feasor with someone else. This provision is not contained in the recommended bill *and in cases involving joint tort-feasors the rights and liabilities of the United States will be determined by the local law."* (Emphasis supplied.) H. R. Rep. No. 2245, 77th Cong., 2d Sess. 12.

This recognizes that with the provision for proportionate liability eliminated, as is still the case, the immunity of the United States should be considered as waived in relation to the Government's rights and liabilities in cases involving joint tort-feasors.

In the same report, at page 9, the Committee made statements which are relied upon by the Government in argument, as assimilating the proposed jurisdiction of the District Courts under the Federal Tort Claims Act to their existing jurisdiction under the Tucker Act. Based on such assimilation, it is argued that the United States may not be joined as a defendant under the new Act because it could not be so joined under the Tucker Act. These statements were repeated in the report of the same Committee in 1945. H. R. Rep. No. 1287 (on H. R. 181), 79th Cong., 1st Sess. 5. The statements, however,

separate action but by impleading the joint tort-feasor as a third-party defendant. See 3 Moore's Federal Practice (2d ed. 1948) 507, *et seq.* It is fair that this should work both ways. However, if the Act is interpreted as now urged by the Government, it would mean that if an injured party recovered judgment against the Government, the Government then could sue its joint tort-feasor for the latter's contributory share of the damages (local substantive law permitting). On the other hand, if the injured party recovered judgment against the private tort-feasor, it would mean that (despite local substantive law favoring contributory liability) that individual could not sue the Government for the latter's contributory share of the same damages. Presumably, the claimant would be relegated to a private bill for legislative relief. Such a result should not be read into this Act without a clearer statement of it than appears here.

We find, therefore, that the Government has consented to be sued for contribution under the circumstances of these cases—at least in a separate action. There remains the question of whether the Government may be impleaded as a third-party defendant.

------

were entirely omitted from even the sectional analysis of the measure when in 1946 it was incorporated in the Reorganization Bill and the report on it was made by the Senate Committee on the Organization of Congress. S. Rep. No. 1400 (on S. 2177), 79th Cong., 2d Sess. 29–34. The omitted comments related to the joinder of the United States as a co-defendant, rather than as a third-party defendant. We note also that the Tort Claims Act substantially broadens the jurisdiction of the District Courts as compared to that provided by the Tucker Act. Under the Tort Claims Act their jurisdiction is unlimited in amount instead of being restricted to claims not exceeding $10,000; it is exclusive of, rather than concurrent with, that of the Court of Claims, and the District Court procedure is expressly made subject to the Federal Rules of Civil Procedure rather than to the Tucker Act.

## The Government Has Consented To Be Impleaded as a Third-Party Defendant in an Action for Contribution Due a Joint Tort-Feasor.

The Government contends that, even if the Federal Tort Claims Act carries the Government's consent to be sued in a separate action for contribution due a joint tort-feasor, it does not carry consent to be impleaded as a third-party defendant to meet such a claim.

We find nothing in the nature of the rights and obligations of joint tort-feasors to require such a procedural distinction, nor does the Act state such a requirement. On the contrary, the Act expressly makes the Federal Rules of Civil Procedure applicable,[9] and Rule 14 provides for third-party practice.[10]

---

[9] "SEC. 411. In actions under this part [suits on tort claims against the United States], the forms of process, writs, pleadings, and motions, and the practice and procedure, shall be in accordance with the rules promulgated by the Supreme Court pursuant to the Act of June 19, 1934 (48 Stat. 1064) [Federal Rules of Civil Procedure]; and the same provisions for counterclaim and set-off, for interest upon judgments, and for payment of judgments, shall be applicable as in cases brought in the United States district courts under the Act of March 3, 1887 (24 Stat. 505) [Tucker Act]." 60 Stat. 844, 28 U. S. C. (1946 ed.) § 932.

The above references to the specific instances in which the Tucker Act procedure is to control under the Federal Tort Claims Act emphasize the application of the Federal Rules of Civil Procedure under all other circumstances.

In the revision of Title 28, effective September 1, 1948, this section was omitted as unnecessary because "the Rules of Civil Procedure promulgated by the Supreme Court shall apply to all civil actions." S. Rep. No. 1559, 80th Cong., 2d Sess. 12, as to Amendment No. 61.

[10]        "RULE 14. THIRD-PARTY PRACTICE.

"(a) WHEN DEFENDANT MAY BRING IN THIRD PARTY. Before the service of his answer a defendant may move *ex parte* or, after the service of his answer, on notice to the plaintiff, for leave as a third-party plaintiff to serve a summons and complaint upon a person

This brings the instant cases within the principle approved in *United States* v. *Aetna Surety Co.,* 338 U. S. 366, 383:

> "In argument before a number of District Courts and Courts of Appeals, the Government relied upon the doctrine that statutes waiving sovereign immunity must be strictly construed. We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement in *Anderson* v. *Hayes Construction Co.,* 243 N. Y. 140, 147, 153 N. E. 28, 29–30: 'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.' "

Once we have concluded that the Federal Tort Claims Act covers an action for contribution due a tort-feasor, we should not, by refinement of construction, limit that consent to cases where the procedure is by separate action and deny it where the same relief is sought in a third-party action. As applied to the State of New York, Judge Cardozo said in language which is apt here: "No sensible reason can be imagined why the State, having consented to be sued, should thus paralyze the remedy." 243 N. Y. at 147, 153 N. E. at 29. "A sense of justice has brought

---

not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. If the motion is granted and the summons and complaint are served, the person so served, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 . . . . The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. . . ." (The amendments which became effective March 19, 1948, and are included here, made no changes that are material in the instant cases.)

Rule 20 similarly provides for the permissive joinder of parties.

a progressive relaxation by legislative enactments of the rigor of the immunity rule. As representative governments attempt to ameliorate inequalities as necessities will permit, prerogatives of the government yield to the needs of the citizen. . . . When authority is given, it is liberally construed." *United States* v. *Shaw*, 309 U. S. 495, 501.

The Government suggests that difficult procedural problems may arise in other cases if a waiver of immunity is held to exist in these cases. For example, the Act requires claims against the United States to be tried without a jury and, although a jury was not insisted upon in the instant cases, the Seventh Amendment to the Constitution preserves to private individuals their right of trial by jury on such claims in a federal court. The Government argues that the Act is not sufficiently specific to permit two such different modes of trial to arise in the same case.

Such difficulties are not insurmountable.[11] If, for example, a jury had been demanded in the *Yellow Cab* case, the decision of jury and nonjury issues could have

---

[11] See *Englehardt* v. *United States*, 69 F. Supp. 451 (D. C. Md.); *Newsum* v. *Pennsylvania R. Co.*, 79 F. Supp. 225 (D. C. S. D. N. Y.) (third-party practice); *Maryland* v. *Manor Real Estate & Trust Co.*, 83 F. Supp. 91 (D. C. Md.), rev'd in part on other grounds, 176 F. 2d 414; *Rivers* v. *Bauer*, 79 F. Supp. 403 (D. C. E. D. Pa.), aff'd, 175 F. 2d 774; and *Bullock* v. *United States*, 72 F. Supp. 445 (D. C. N. J.); also 3 Moore's Federal Practice (2d ed. 1948) 2737–2738; Hulen, Suits on Tort Claims Against the United States, 7 F. R. D. (1948) 699–700; and Note, Joinder of the Government under the Federal Tort Claims Act, 59 Yale L. J. 1515–1521 (1950). Contra: *Prechtl* v. *United States*, 84 F. Supp. 889 (D. C. W. D. N. Y.); *Donovan* v. *McKenna*, 80 F. Supp. 690 (D. C. Mass.); *Uarte* v. *United States*, 7 F. R. D. 705 (D. C. S. D. Calif.), aff'd on other grounds, 175 F. 2d 110; *Drummond* v. *United States*, 78 F. Supp. 730 (D. C. E. D. Va.).

been handled in a manner comparable to that used when issues of law are tried to a jury and issues of an equitable nature in the same case are tried by the court alone.[12]   If special circumstances had demonstrated the inadvisability, in the first instance, of impleading the United States as a third-party defendant, the leave of court required by Rule 14 could have been denied.[13]   If, at a later stage, the situation had called for a separation of the claims, the court could have ordered their separate trial.   Fed. Rules Civ. Proc., 42 (b).   The availability of third-party procedure is intended to facilitate, not to preclude, the trial of multiple claims which otherwise would be triable only in separate proceedings.   The possibility of such procedural difficulties is not sufficient ground for so limiting the scope of the Act as to preclude its application to all cases of contribution or even to all cases of contribution arising under third-party practice.   If the Act develops unanticipated complications, Congress can then meet them to such extent as it may desire to fit the demonstrated needs.

We therefore conclude that the Federal Tort Claims Act carries the Government's consent to be sued for con-

---

[12] See *Ryan Distributing Corp.* v. *Caley,* 51 F. Supp. 377 (D. C. E. D. Pa.) (in patent litigation, claim of damages for infringement was tried by jury and petition for injunction was passed on by the court) ; *Ford* v. *Wilson & Co.,* 30 F. Supp. 163 (D. C. Conn.) (legal issues to jury, equity issues to the court) ; *Munkacsy* v. *Warner Bros. Pictures,* 2 F. R. D. 380 (D. C. E. D. N. Y.) (libel issue by jury; violation of civil rights where jury was not demanded was tried by the court) ; *Mealy* v. *Fidelity National Bank,* 2 F. R. D. 339 (D. C. E. D. N. Y.) (two causes of action tried by court and third by jury) ; *Elkins* v. *Nobel,* 1 F. R. D. 357 (D. C. E. D. N. Y.) (one cause of action tried by court and three by jury).   See also, Fed. Rules Civ. Proc., 38 (c), 39 and 42.

[13] See note 10, *supra.*

tribution not only in a separate proceeding but also as a third-party defendant.

The *Yellow Cab* case is affirmed. The *Capital Transit* case is reversed and the cause remanded to the District Court for proceedings in conformity with this opinion.

*No. 218, affirmed.*

*No. 204, reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent.