**In re AIR CRASH AT LITTLE ROCK, ARKANSAS, ON JUNE 1, 1999.**

**MDL No. 1308.**

United States District Court,
E.D. Arkansas,
Western Division.

Aug. 11, 2000.

Michael E. Hale, D. Keith Fortner, Barber, McCaskill, Jones & Hale, P.A., Little Rock, AR, Philip E. Kaplan, Regina Haralson, Kaplan, Brewer & Maxey, P.A., Little Rock, AR, Michael G. Smith, Michael Norris Shannon, Rose Law Firm, Little Rock, AR, Scott J. Lancaster, J. Phillip Malcom, William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, Byron L. Freeland, Marshall S. Ney, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, Ted Boswell, James Ralph Jackson, Boswell, Tucker & Brewster, Bryant, AR, Sam Hilburn, Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, Debbie Dudley Branson, Frank L. Branson, George Quesada, Frank L. Branson, P.C., Dallas, TX, Peter A. Miller, Law Offices of Peter Miller, Little Rock, AR, Kathlynn G. Fadely, Barry F. Benson, Gary W. Allen, U.S. Department of Justice, Washington, DC, Mark B. Baylen, Federal Aviation Admin., Litigation Div., Washington, DC, John R. Howie, Ladd Sanger, Howie & Sweeney, L.L.P., Dallas, TX, John H. Martin, Thompson & Knight, L.L.P., Dallas, TX, R. Bryant Marshall, Marshall & Owens, P.A., Jonesboro, AR, Norman R. Gordon, Norman R. Gordon & Associates, Shreveport, LA, C. Burt Newell, Bachelor, Newell & Oliver, Hot Springs, AR, David H. Williams, Little Rock, AR, Scott C. Trotter, G. Alan Perkins, Matthew H.P. Warner, Hill Gilstrap Perkins Trotter & Warner, P.A., Little Rock, AR, Robert R. Bodoin, Jimmy W. Evans, Andrew Piel, Hill Gilstrap, Arlington, TX, Robert A. Clifford, Kevin P. Durkin, Clifford Law Offices, P.C., Chicago, IL, Randal R. Craft, Jr., William C. Brown, III, Camille Nicodemus, Louise B. Cobbs, Haight Gardner Holland & Knight, New York City, James W. Orr, Bowers Orr & Dougall, L.L.P., Columbia, SC, David E. Rapoport, Paul D. Richter, Rapoport Law Offices, P.C., Rosemont, IL, Gene A. Ludwig, Ludwig Law Firm, PLC, Little Rock, AR, Michael G. McQuillen, James F. Murphy, Peter V. Bustamante, Adler, Murphy & McQuillen, Chicago, IL, Robert Stockton, Carr & Carr, Tulsa, OK, Nelson P. Miller, Fajen & Miller, P.L.L.C., Grand Haven, MI, Gerald Sterns, Elizabeth Walker, Sterns & Walker, Oakland, CA, Michael L. Slack, John C. Allman, Slack & Davis, L.L.P., Austin, TX, David Cook, Kreindler & Kreindler, New York City, Kent Krause, Speiser, Krause, Dallas, TX, R. Brent Cooper, Cooper & Scully, Dallas, TX, Charles L. Coleman, III, Mark L. Venardi, Holland & Knight LLP, San Francisco, CA, William M. Bache, Monroe & Associates, Tucson, AZ, John A. Greaves, Baum Hedlund Aristei Guilford & Downey, Los Angeles, CA, Collin M. (Marty) Fritz, Trecker & Fritz, Honolulu, HI, D. Douglas Cotton, Fort Worth, TX, Thomas J. Morris, III, Morris & Powell, Ponca City, OK, for Air Crash at Little Rock, AR.

Eric Steinle, Felicia C. Curran, Brenda, D. Posada, Sterns & Walker, Oakland, CA, for American Airlines, Inc.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

On June 1, 1999, American Airlines Flight 1420 crashed upon landing at the Little Rock Airport. There were 132 passengers on board the MD–82 jet aircraft. The pilot and ten passengers sustained fatal injuries, and most other passengers sustained some injuries, varying from minor to severe. Approximately one-third of the passengers were international and, thus, covered by the Warsaw Convention. Most of the litigation arising from this disaster has been filed in the Eastern District of Arkansas. However, suits also have been filed in Texas, Illinois, California, and Hawaii by some passengers.

The Judicial Panel on Multidistrict Litigation has assigned this litigation to me for a determination of common questions of law and fact. Fifty-one (51) cases were either filed in my court initially or were transferred to me. Some cases involve multiple parties consisting of family groups. All have been assigned to Magistrate Judge David Young for settlement conferences, and twenty-three (23) cases have been settled.

■ The international passengers are not only covered by the Warsaw Convention, to which the United States is a signatory, but they are also covered by an agreement signed by the major airlines, including American. The pertinent part of the Warsaw Convention, as it applies to the instant litigation, provides that punitive damages are barred in suits by international passengers. This is the holding of three United States Courts of Appeals. *See, Floyd v. Eastern Airlines,* 872 F.2d 1462 (11 Cir.1989); *Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475 (D.C.Cir.1991); *In re Air Disaster Lockerbie, Scotland on December 21, 1988,* 928 F.2d 1267 (2d Cir.1991).

At the initial conference with the attorneys in this litigation, I advised them that punitive damages would not be permitted in the cases involving international passengers. In other words, I told the parties that I would follow the decisions of the three Courts of Appeals, even though the Court of Appeals for the Eighth Circuit has not yet considered the issue of the availability of punitive damages in cases involving international passengers.

■ A different rule applies, of course, in the domestic cases. Punitive damages can be obtained if permitted by applicable state law and justified by the evidence.

I mentioned, *supra,* that an agreement was signed by the major airlines, including American. This agreement, the International Air Transport Association Intercarrier Agreement ("IATA"), abrogates a provision of the Warsaw Convention which established a cap of $75,000 for damages to international passengers. The IATA establishes contractual absolute liability to all international passengers up to a cap of SDR 100,000.[1] For claims in excess of SDR 100,000, the carriers' defenses are limited. Under Article 20 of the Warsaw Convention, the carrier may show that it took "all necessary measures to avert the disaster or that it was impossible for them to take such measures." *See, Kreindler, Aviation Accident Law* (Matthew Bender, 1999), §§ 10.11, 10.11[3]. American has waived this defense in the case at bar.[2] Thus, American has agreed, by contract, to absolute liability with regard to compensatory damages to its international passengers. The only issue is the amount of

---

1. SDR is an abbreviation for "Special Drawing Rights," a term used by the International Monetary Fund, which publishes exchange rates for conversion of SDRs into the currency of virtually every country in the world. SDR 100,000 amounted to approximately $145,000 when the agreement was signed by the Air Transport Association of America.

2. The defense of comparative fault, a defense also recognized in the IATA, is inapplicable under the circumstances of this case and has also been waived.

compensatory damages owed to them. American's negligence or fault is not an issue nor are punitive damages. The international cases which have not settled are now set for trial in the next 60 days for the sole determination of compensatory damages.

At the initial conference with the attorneys, held on January 31, 2000, I gave all parties until August 1, 2000, to bring additional parties into this litigation. American has now filed a motion for permission to file third-party tort claim complaints against the United States and Mr. Kenneth Kaylor, an air traffic controller at the Little Rock airport on duty the night of the crash.[3] American seeks to implead the United States in all cases—those involving domestic passengers as well as those involving international passengers.

Because the first Warsaw case was set for trial on August 14, 2000, I held an expedited hearing on August 1, 2000, to dispose of the issue raised by American's motion.

■ I summarily denied permission to implead Mr. Kenneth Kaylor. American conceded that, at all times, Kaylor was acting within the scope of his employment as a federal employee. He, therefore, has complete immunity under the Federal Tort Claims Act. [28 U.S.C.A. 2679].

■ I also denied permission for American to seek contribution under the Arkansas Contribution Among Joint Tortfeasors Act, A.C.A. § 16–61–201, *et seq.*, as to cases involving international passengers. With regard to passengers covered by the Warsaw Convention and the IATA, there is no right of contribution under Arkansas law.

There was no right to contribution among joint tortfeasors at the common law. *Merryweather v. Nixon*, (1799) 8 Tr 186, 101 EngRep 1337. The right to contribution is statutory; and in Arkansas

that right is found at A.C.A. § 16–61–202(1): "The right of contribution exists among joint tortfeasors." American is not entitled to seek contribution from the United States because, even if the United States is responsible for all or part of the damages to the international passengers, American is not a joint tortfeasor as that term is defined under Arkansas law:

> For the purpose of this subchapter the term "joint tortfeasors" means two (2) or more persons jointly or severally liable *in tort* for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

A.C.A. § 16–61–201 (Emphasis added). To the contrary, American, as a signatory to the IATA, has assumed liability to international passengers solely on the basis of its contractual agreement to be absolutely liable to international passengers. Its liability is not based on negligence, tort or fault. None of these concepts are involved in any way with American's liability toward its international passengers. In sum, American is liable to its international passengers in contract, not in tort. Because of this, there can be no claim against the United States for contribution under Arkansas law. While under the IATA, discussed above, American reserved its rights to contribution and indemnity, there simply is no right of contribution under Arkansas law in this circumstance.

A somewhat analogous situation was presented in the Arkansas case of *Scalf v. Payne*, 266 Ark. 231, 583 S.W.2d 51 (1979). In that case, one of multiple defendants in an automobile accident was found not to be negligent. The Arkansas Supreme Court held that, because he was found not negligent, he was not a "joint tortfeasor." Thus, the non-settling co-defendants were not entitled to credit for the amount paid the settling defendant paid before trial.

---

**3.** The theory of the third-party complaints is that the air traffic controller was responsible,

in whole or in part, for the crash.

■ Even assuming American might have some right of indemnity against the United States, which is highly doubtful under Arkansas law, such a contention does not help American at this point. A cause of action for indemnity does not arise until the claim or judgment is paid. *See, e.g.,* Judge J. Smith Henley's decision in *C & L Rural Electric Cooperative Corp. v. American Casualty Co.,* 199 F.Supp. 220, 222 (E.D.Ark.1961).

■ It is true that a cause for indemnity, even though contingent, maybe accelerated under Rule 14 of the Federal Rules of Civil Procedure and tried together with the underlying action, but there is no good reason to do so in the Warsaw cases, and there are important reasons not to allow the impleader. First, accelerating the indemnity claim would not promote judicial economy in terms of either time or expense. As noted *supra,* the Warsaw cases are set to be tried, in jury trials, only on the issue of compensatory damages. This means that there will be no evidence taken on the cause of the crash and no evidence of fault on the part of anyone. An indemnity claim would involve a trial of liability and apportionment of fault between American and the United States, issues not otherwise scheduled for trial in the Warsaw cases. The evidence necessary for the indemnity claim would be entirely different from that necessary for a determination of damages. Thus, there would be no economy of time or expense, because there is no overlap in the issues or evidence to be presented for trial.

Second, accelerating the indemnity claim would unduly complicate the cases. Because American's claim would be against the United States, it would fall under the Federal Tort Claims Act (FTCA). 28 U.S.C. § 2679. Under the FTCA, any apportionment of fault would be a decision for the court and not for a jury. Thus, not only would the evidence be entirely different, but the indemnity action would be tried to the Court, and the damages action would be tried to juries. In other words, the indemnity action would have to be tried at a different time than the damages trial. Otherwise, a jury would hear evidence of American's negligence in cases where fault is not to be an issue, a situation to which American would no doubt object.

Third, American will suffer no prejudice by waiting until the conclusion of the Warsaw cases to seek indemnity from the United States. It will have the same rights after the determination of damages. There is no difference in the amount of time or money American will have to spend prosecuting its claim later.

■ Accordingly, permission is granted for American to implead the United States in the domestic (non-Warsaw) cases. These cases are grounded in negligence and tort. The Supreme Court has held that the United States may be implied for contribution when it is liable as a joint tortfeasor. *United States v. Yellow Cab,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). In accordance with my order delivered orally at the hearing on August 1, 2000, American has filed third-party actions against the United States in the domestic cases. The plaintiffs are directed to notify the Court within thirty (30) days of the date of this order of their intention to sue over against the United States in the domestic cases, because a decision by the plaintiffs to sue the United States will alter the trial settings of those cases.