**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 16 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ESTATE OF ADAM HARSHMAN,
RACHEL HARSHMAN, BROOKS
HARSHMAN, AND LAUREN
HARSHMAN,

      Plaintiffs - Appellants,

v.

JACKSON HOLE MOUNTAIN
RESORT CORPORATION, a
Wyoming Corporation,

      Defendant - Appellee.

No. 02-8046

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 01-CV-0100-B)**

---

Robert E. Schroth Sr. (Robert E. Schroth Jr., with him on the briefs), Jackson, Wyoming, for Plaintiff–Appellant.

Mikel L. Moore (James K. Lubing, Jackson, Wyoming, with him on the brief), Christensen, Moore, Cockrell, Cummings & Axelberg, P.C., Kalispell, Montana, for Defendant–Appellee.

---

Before **KELLY**, **HENRY**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

On February 28, 2000, sixteen year old Adam Harshman was fatally injured while snowboarding over a "table top" jump in the man-made terrain park at the Jackson Hole Mountain Resort. Negligence and wrongful death claims were brought by Adam's mother, Rachel Harshman, his father, Brooks Harshman, and his sister, Lauren Harshman ("the Harshmans" – Wyoming residents) both against Jackson Hole Mountain Resort Corporation ("Jackson Hole" – a Wyoming Corporation) as operator of the ski resort and against the United States as owner of the real property. The district court dismissed the claims against the United States for lack of subject matter jurisdiction and granted summary judgment for Jackson Hole. On appeal, the Harshmans challenge the district court's grant of summary judgment to Jackson Hole. Exercising jurisdiction under 28 U.S.C. § 1291 we conclude that because the district court dismissed the federal claims for lack of subject matter jurisdiction, it necessarily lacked subject matter jurisdiction over the pendent state law claims against the non-diverse defendant, Jackson Hole. Accordingly, we **VACATE** the district court's grant of summary judgment for Jackson Hole and **DISMISS**.

## I

Jackson Hole opened its specially-designated terrain park for snowboarders and skiers in February 2000. It encompassed a portion of an intermediate ski run and was separated by a fence accessed through a gate. Containing various man-

made features, it included a "table top" jump constructed of snow piled to create both an inclined ramp and a sloped landing area. Jackson Hole did not follow any specific standards for how the jump should be constructed and altered it to provide a steeper take-off angle the night before Adam Harshman's accident. On February 28, 2000 Adam snowboarded through the gate to the terrain park, maneuvered onto the ramp, jumped through the air, and landed on his upper back and head at a point past the sloped landing area. His resulting injuries proved fatal.

The issue presented to the district court on summary judgment and argued here on appeal is whether Adam's death resulted from an inherent risk of snowboarding. Under the Wyoming Recreation Safety Act, providers of sport or recreational opportunities, such as Jackson Hole, are protected against liability for risks inherent to particular outdoor sports. Wyo. Stat. Ann. § 1-1-123(a). Pursuant to this act, the district court found Adam's accident was the result of an inherent risk of "snowboard jumping and riding over a man-made tabletop jump in a specially designated terrain park." Harshman v. Jackson Hole Mountain Resort Corp., 200 F. Supp. 2d 1329, 1344 (2002). Finding that Jackson Hole owed no duty to protect Adam Harshman from the inherent risks of his snowboarding activity, the district court granted summary judgment for the resort. Id. at 1346.

3

Despite the predominance of Wyoming state law in this cause of action, the Harshmans pursued their claims in federal district court. Federal jurisdiction was premised on claims arising under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346, against the United States Forest Service ("USFS") which administers a "Special Use Permit" for the ski resort. Jackson Hole's "Special Use Permit" and incorporated "Winter Operating Plan" provided broad oversight of Jackson Hole's operations to the USFS while delegating daily safety decisions and management to Jackson Hole. Harshman, 200 F. Supp. 2d at 1336. On the basis of this broad oversight, the Harshmans alleged that the USFS breached a duty to implement proper levels of safety regulation over Jackson Hole's operations.

Finding that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), applies to the Forest Service's decision not to regulate the manner in which the resort was operated, the district court granted the United States' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Pursuant to 28 U.S.C. § 1367, however, the district court retained supplemental jurisdiction over the state law claims and the non-diverse party, Jackson Hole. On that jurisdictional basis, the district court granted Jackson Hole's motion for summary judgment, which the Harshmans now appeal, having abandoned their appeal of the United States' dismissal.

4

We exercise jurisdiction over the limited question of whether having dismissed the FTCA claims for lack of subject matter jurisdiction the district court properly had jurisdiction to entertain supplemental state law claims. "If the district court lacked jurisdiction, 'we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.'" Gold v. Local 7 United Food & Commercial Workers Union, 159 F.3d 1307, 1310 (10th Cir. 1998) (overruled on other grounds) (quoting United States v. Corrick, 298 U.S. 435, 440 (1936)).

## II

On every appeal, "the first and most fundamental question is that of jurisdiction," both of this court and of the district court from which appeal is taken. Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900). On dismissing the Harshmans' claims against the United States, the district court found, and the parties agreed, that "in the interest of justice" it had supplemental jurisdiction over the state law cause of action. Harshman, 200 F. Supp. 2d at 1331. If mere agreement among the litigants and the district court were sufficient to confer federal jurisdiction, then our inquiry would be at an end. However, it is well established that the parties "may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy.'" Sosna v. Iowa, 419 U.S. 393, 398 (1975). Because "lack of

5

federal jurisdiction cannot be waived or be overcome by an agreement of the parties," we must satisfy ourselves not only of our own jurisdiction, "but also that of the lower courts in the cause under review." Mitchell v. Maurer, 293 U.S. 237, 244 (1934). Our first duty, therefore, even if not moved to it by either party, is to ensure sua sponte that we do not "use the judicial power of the United States in a case to which the Constitution and laws of the United States have not extended that power." Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 384 (1884). As federal courts are courts of limited jurisdiction and require both constitutional and statutory authority in order to adjudicate a case,[1] and because important values of federalism and separation of powers are implicated in the limited jurisdiction of federal courts, we are mindful of our duty to avoid deciding what we have no authority to decide. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998). Thus our first, and in this case our only, inquiry is whether we, as well as the district court, properly have jurisdiction over the

---

[1] Federal jurisdiction is limited by Article III which provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made," U.S. Const., art. III, § 2, cl. 1, but also by congressional power to create federal courts and invest them with jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372 (1978). Congress has never extended the judicial power of the United States to the full extent permitted by the Constitution, and has never made "the interest of justice" or the agreement of the parties the touchstone for jurisdiction. Sheldon v. Sill, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers.").

remaining pendent state law claims once the Harshmans' claims against the United States were dismissed for want of subject matter of jurisdiction.

We begin by examining the basis on which the district court may exercise supplemental jurisdiction. Seeking to vindicate values of economy, convenience, fairness, and comity underlying the judicially-created doctrine of pendent jurisdiction, Congress granted statutory authority to district courts to hear claims that form "part of the same case or controversy" as the claims on which original federal jurisdiction is based. 28 U.S.C. § 1367(a); see City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997); Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988). District courts do not otherwise have jurisdiction to hear pendent state law claims but for their intertwinement with claims over which they have original jurisdiction. Section 1367(a) provides that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have <u>original jurisdiction</u>, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action <u>within such original jurisdiction</u> that they form part of the same case or controversy under Article III of the United States Constitution.

(emphasis added). Judicial economy and fairness result from retaining jurisdiction over mixed state and federal claims where "The state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). By not forcing potential litigants either to avoid federal courts or to bifurcate their causes of action between state

7

and federal courts, supplemental jurisdiction promotes the accessibility of federal courts as well as overall judicial economy. In the Harshmans' case, if the district court properly had original jurisdiction, the relation between their negligence and wrongful death claims against the United States and against Jackson Hole would clearly derive from a "common nucleus of operative fact" such that claims against both parties are part of the same case or controversy and thus would be best adjudicated together.

Even where a "common nucleus of operative fact" exists, federal jurisdiction is not mandatory over pendent claims or parties. Section 1367(c) provides conditions where district courts may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion. City of Chicago, 522 U.S. at 173; Gibbs, 383 U.S. at 726. Although we would normally review a district court's decision to exercise supplemental jurisdiction for abuse of discretion, Gold, 159 F.3d at 1310, we are confronted here not with an issue of judicial discretion, but with an issue of judicial power. Supplemental jurisdiction must first be pendent to "claims in the action within such original jurisdiction" of the district court before the judicial power of the United States may be invoked properly. § 1367(a). Because the district court dismissed the claims against the United States over which it had original jurisdiction, the

8

question becomes whether it had any basis on which to retain supplemental jurisdiction over the Harshmans' state law claims against Jackson Hole.

The Harshmans invoked, and the district court exercised, original federal jurisdiction over claims against the United States pursuant to the FTCA. In pertinent part it grants the district courts

> exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Providing a broad waiver of the Federal Government's sovereign immunity, this act removes a significant bar to a district court's subject matter jurisdiction over claims against the sovereign. United States v. Yellow Cab Co., 340 U.S. 543, 547 (1951) ("The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language."). This expansive jurisdiction over tort claims brought against the United States is not, however, absolute.

Federal jurisdiction under the FTCA is limited by a number of exceptions including the discretionary function exception. It provides that § 1346(b)'s grant of jurisdiction does not apply to "Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty

9

on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This limitation on jurisdiction "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). Accordingly, we have noted that where the waiver of immunity does not apply we have no subject matter jurisdiction to entertain suits against the United States. Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997) (noting that with regard to suits challenging government conduct where "the United States retains its sovereign immunity . . . the district court lacks subject matter jurisdiction to hear the suit.").

Dismissing the Harshmans' claims against the United States for lack of subject matter jurisdiction on a Rule 12(b)(1) motion, the district court found that the discretionary function exception applied in the present case. We review de novo the district court's determination to apply this exception to undisputed facts. Aragon v. United States, 146 F.3d 819, 823 (10th Cir. 1998). Because no facts are in dispute concerning the USFS's role in issuing a "Special Use Permit" to Jackson Hole or in regulating the operation of the ski resort we therefore review the legal determination de novo.

10

Discretionary function analysis involves two steps.  Berkovitz v. United States, 486 U.S. 531, 536 (1988).  First, the court asks whether the challenged action involves "an element of judgment or choice."  United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz, 486 U.S. at 536).  Second, the court asks whether the government decisions are based "on considerations of public policy."  Id. at 323 (quoting Berkovitz, 486 U.S. at 536).  The Harshmans claimed that the government failed to regulate properly the activities of Jackson Hole.  Applying the first step, the district court found that there are no specific "statutes, regulations, or policies" that prescribe the manner in which a ski resort on National Forest land must be operated.  Harshman, 200 F. Supp. 2d at 1338.  Therefore, the USFS's refusal to regulate more closely the daily operations of the resort was entirely in its discretion.   Applying the second step, the district court found that the amount of government oversight over the daily operations of Jackson Hole was a matter of public policy—balancing use of federal lands with the appropriate degree of governmental interference in that use.  Harshman, 200 F. Supp. 2d at 1340.  Thus, the district court concluded that refusing to provide safety standards for the operation of the ski resort as part of its "Special Use Permit" was wholly within the USFS's discretion and concerned a matter of public policy.  Accordingly, we are satisfied that the district court correctly dismissed the United States from the Harshmans' negligence and wrongful death

11

causes of action on the basis of the FTCA discretionary function exception. § 1346(a).

We are also satisfied that the motion to dismiss claims against the United States was properly granted under Fed. R. Civ. P. 12(b)(1). Determining the necessary conditions for when a Rule 12(b)(1) motion or a Rule 12(b)(6) motion is appropriate can be a source of much complexity and consternation. See, e.g., Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188–89 (2d Cir. 1996). Although in many cases the distinction does not matter, we address the issue here because the ability to exercise supplemental jurisdiction over pendent state law claims hinges on the distinction. See United Int'l. Holdings Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1220 (10th Cir. 2000); Nowak, 81 F.3d at 1188 ("Since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims.").

Where the distinction does matter, we should not be constrained by the designation attached to the dismissal by the district court, but we should satisfy ourselves whether a party should have been dismissed under Rule 12(b)(1) or 12(b)(6). Dismissal pursuant to Rule 12(b)(6) would not necessarily deprive a district court of original jurisdiction because granting a Rule 12(b)(6) motion is

consistent with having jurisdiction over the case or controversy but deciding that a plaintiff has failed to allege sufficient claims to warrant judicial relief. Bell v. Hood, 327 U.S. 678, 682 (1946) ("If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."). By contrast, dismissal pursuant to Rule 12(b)(1) would deprive a district court of original subject matter jurisdiction because it is a recognition that the court does not properly have statutory or constitutional power to adjudicate the case. Bell, 327 U.S. at 683.[2]

In the present case dismissal of the United States pursuant to Rule 12(b)(1) is a conclusion that the FTCA does not properly provide a jursidictional basis for the Harshmans' supplemental state law claims. This court has held that "the discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." Miller v. United States, 710 F.2d 656, 662 (10th Cir. 1983)

---

[2] Justice Holmes has described the difference as follows: "Jurisdiction is authority to decide the case either way. Unsuccessful as well as successful suits may be brought upon the act. . . . No doubt if it should appear that the plaintiff was not really relying upon [a federal statute] for his alleged rights, or if the claim of right were frivolous, the case might be dismissed. In the former instance the suit would not really and substantially involve a controversy within the jurisdiction of the court, and in the latter the jurisdiction would not be denied, except possibly in form." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913).

13

(quotation omitted); see also Johnson v. United States, 949 F.2d 332, 335–36 (10th Cir. 1991) (noting that "application of this exception is therefore a threshold issue—a jurisdictional issue which precedes any negligence analysis"); Aragon, 146 F.3d at 823 ("the discretionary function exception poses a jurisdictional prerequisite to suit").  Moreover, § 2680  provides that "provisions of this chapter and section 1346(b) of this title shall not apply to . . ." discretionary functions.  Thus, § 1346(b) broadly waives the United States' immunity from suit on the one hand, and § 2680 limits the waiver in specific circumstances on the other.  When a suit falls within the limitation to § 1346(b)'s waiver, dismissal pursuant to 12(b)(1) is appropriate.

By retaining jurisdiction over the state law claims and non-diverse parties pursuant to § 1367 supplemental jurisdiction, the district court exceeded its authority.  Here dismissing the federal tort claims and the federal defendant for lack of subject matter jurisdiction stripped the district court of its original jurisdiction.[3]  The discretionary function exception operates as a jurisdictional bar, and § 2680 clearly indicates that the discretionary function exception is an

---

[3] "[I]f the federal claim was dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication.  The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental. Therefore, the district court has no discretion to exceed the scope of its Article III power, and must dismiss the state law claims without prejudice."  16 James Wm. Moore et al., Moore's Federal Practice § 106.66[1] (3d ed. 2004).

14

exception to the grant of jurisdiction provided in § 1346.  Miller, 710 F.2d at 662.

It therefore follows that without original jurisdiction, there is no proper basis on

which the district court can retain supplemental jurisdiction over the Harshmans'

state law claims.[4]  In other words, if there be no federal subject matter

jurisdiction, it follows that there is nothing to which to append state claims—in a

pendent jurisdictional sense zero under 12(b)(1) is absolute zero.

### III

"Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only

function remaining to the court is that of announcing the fact and dismissing the

cause."  Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  When the district

court dismissed the United States from this cause of action for lack of subject

matter jurisdiction, it lost all original jurisdiction on which to append

supplemental state law claims, even if they arose from the same common nucleus

of fact.  The only function left to us is to announce the fact that the district court

lacked jurisdiction to grant summary judgment for Jackson Hole.  Accordingly,

---

[4] We note that § 1367(d)'s tolling provision provides "assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court."  Jinks v. Richland County, 538 U.S. 456, 464 (2003).  State law actions brought, correctly or incorrectly, under § 1367(a) are pendent to any action against the United States.  We also note that principles of comity suggest that Wyoming courts will be better suited to adjudicate claims raised under the Wyoming Recreation Safety Act.

15

we **VACATE** the district court's grant of summary judgment for Jackson Hole, and **DISMISS** this appeal.