JERRY E. SMITH, CIRCUIT Judge,
joined by E. GRADY JOLLY, EMILIO M. GARZA, BENAVIDES and PRADO,
Circuit Judges, dissenting:
In an act of Orwellian doublethink,[1] the majority concludes that although “Rule 17(c) does not specifically state” that guardian ad litem fees may be taxed as costs, it nevertheless provides “express statutory authorization” for that result. Compare Maj. Op. at 454 with id. at 452, 454.[2] Emboldened by that cogent insight, the majority then embarks on a broad survey of legal fictions, highlighted by an impliedly explicit waiver of sovereign immunity and the discovery that a statute has binding force despite its repeal in 1948.
As if sitting in Congress, the majority is ultimately able to agree on nothing more than a result: Guardian ad litem fees may be taxed as costs against the government despite sovereign immunity and despite Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The doctrinal basis for that result is so illusory, however, that the majority feels compelled to insulate itself in layer upon layer of “alternative” holdings. As a result, the true basis for today’s decision remains a mystery — even to the majority that wrought it.
The unescapable reality is that the federal rules and statutes fail to provide that ad litem fees may be taxed as costs, and the only other authority for that proposition, duPont v. S. Nat’l Bank, 771 F.2d 874 (5th Cir.1985), fails to survive Crawford Fitting. Because the majority is unable to accept the policy implications of that result, it boldly infers the existence of a power that Congress has not yet seen fit to provide, then brazenly declares that it is *461 “expressly” and “specifically” provided for in rules and statutes that are entirely silent on the subject. Such an opinion can only be the product of a majority that is more confident in its result than in its reasoning, so I respectfully dissent.
I.
In its first and least convincing holding, the majority accepts the argument that Crawford Fitting implicitly overrules du-Pont, so the majority agrees that it is therefore necessary to find a rule or statute that expressly authorizes the taxation of ad litem fees as costs.[3] Faced with that challenge, the majority holds that the power to tax costs should be expressly enumerated in rule 17(c), so the majority accordingly finds — notwithstanding the text of the rule — that it is expressly enumerated.[4]
As I will demonstrate, the majority’s reasoning is severely flawed. It is no exaggeration to observe that the majority (1) ignores the plain meaning of some of the most elementary words in the English language; (2) relies on a long-since repealed waiver of immunity; (3) gives the federal rules an impermissibly broad mandate; and (4) then inexplicably refuses to remand for application of its newly-drafted rules.
A.
The majority finds its “express authorization” in two parts of rule 17(c): first, in the language that provides for the appointment of a guardian ad litem; and second, in the language that allows the court to issue other orders for the protection of the minor. Cf. Fed.R.Civ.P. 17(c). I address those claims in turn.
1.
It is not surprising that the meaning of the term “express” has changed little since 1990, when this court decided Kelly and first begat the concept of an impliedly-express statement. Then, as now,. the term “express” meant “directly and distinctly stated or expressed rather than implied or left to inference.” Webster’s Third New Int’l Dictionaey 803 (Merriam-Webster 1986).[5] It is, to put it mildly, “the very opposite of ‘implied.’ ” Kelly, 908 F.2d at 1222 (Smith, J., dissenting).
Because rule 17(c) makes no mention of either the taxation of costs or the payment of ad litem fees, there is no sense in which it “expressly” provides that a guardian’s fees may be taxed as costs. If the power to tax such fees as costs exists somewhere within rule 17(c), it can only be as an implicit component of the district court’s authority to appoint a guardian. As a result, the majority’s claim that rule 17(c) contains “express statutory authorization” for the taxation of ad litem fees as costs is patently false.[6]
*462 This flaw in the majority’s argument becomes all the more glaring when rule 17(c) is compared with rule 53, which governs the appointment and compensation of masters. See Fed.R.CivP. 53. The rules committee knows how to be explicit when it wishes to be, as rule 53 makes abundantly plain.
The newly revised rule 53(a)(3) provides that “[i]n appointing a master, the court must consider the fairness of imposing the likely expenses on the parties.” Fed. R.Crv.P. 53(a)(3) (West 2004).[7] Rule 53(h), by its own title, expressly addresses the “compensation” of masters. Subsection (h)(1) provides that “[t]he court must fix the master’s compensation before or after judgment on the basis and terms stated in the order of appointment.” Fed. R. Civ. P. 53(h)(1). Subsection (h)(2) further specifies that the master’s compensation may be paid by either party or both, or from a fund or subject matter of the action within the court’s control. Fed. R. Crv. P. 53(h)(2).
Thus, it is fair to say that rule 53’s express provisions dealing with both the appointment and the compensation of special masters constitute “explicit” authorization of the kind contemplated in Crawford Fitting. Rule 17(c), in contrast, provides only for the appointment of guardians ad litem. It says nothing whatsoever about the means by which an appointed guardian is to be compensated and, accordingly, does not contain the “explicit statutory authorization” the majority needs to reach its result.
Ironically, this point is further illustrated by the majority’s advocacy of one of its “alternative” holdings. In arguing that Crawford Fitting is inapposite here, the majority claims that the federal rules are similar to state laws that provide for the compensation of guardians ad litem. See Maj. Op. at 459 & n.19. The critical difference, however, between federal law and the state laws relied on by the majority, is that the latter all specifically and unambiguously provide that guardian ad litem fees may be taxed as costs.
For example, the majority cites Alabama Rule of Civil Procedure 17(d). Much like federal rule 17, Alabama’s rule 17(c) provides that a district court “shall appoint a guardian ad litem (1) for a minor defendant, or (2) for an incompetent person not otherwise represented in an action.” Ala. R. Civ. P. 17(c). Unlike the federal rule, however, Alabama’s rule also includes sub-part (d), which provides:
In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for services rendered in such cause, to be taxed as a part of the costs in such action, and which is to be paid when collected as other costs in the action, to such guardian ad litem.
Ala. R. Crv. P. 17(d) (cited in the Maj. Op. at 459 n.19).
Mississippi’s rules are similar. As with the federal and Alabama rules, Mississippi has a rule 17(c) that provides for the appointment of a guardian ad litem for unrepresented minors. Miss. R. Crv. P. 17(c). Just as in Alabama, but unlike the federal rule, the appointment provision is immedi *463 ately followed by a section that addresses the compensation of guardians:
In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the cost in such action.
Miss. R. Civ. P. 17(d).[8]
If the similarly worded state rules 17(c) already “expressly” provided for that result, these provisions would be wholly extraneous. The fact is that they are not. No matter how much the majority thinks the practice in federal courts should be the same as in these states, rule 17(c) provides only for the appointment of guardians ad litem, and there is no commensurate federal rule or statute specifying the manner in which their fees are to be paid. If that omission is bad policy, the power to craft a solution lies solely in the hands of Congress and the drafters of the federal rules, not simply in the abusive “exercise [of] our authority as an en banc Court.” Cf. Maj. Op. at 455.
2.
Having created for the district courts, out of whole cloth, the “inherent authority” to tax ad litem fees as costs, the next step in the majority’s linguistic putsch is to find a way to place that power into the text of the federal rules. Cf. Maj. Op. at 454. The majority does this by seizing on rule 17(c)’s provision that the district courts shall “make such other order as it deems proper for the protection of the infant or incompetent person.” Id. According to the majority, “[t]his additional power is necessarily required so the district court can effectuate its appointment of a competent, independent guardian ad litem.” Id.
That argument is premised on a selective quotation of rule 17(c). The full sentence relied on by the majority provides:
The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.
Fed.R.Civ.P. 17(c) (emphasis added). Contrary to the majority’s understanding, the plain meaning of this passage is that rule 17(c) affords the district courts a choice between appointing an ad litem and issuing other orders for the protection of the minor; it does not give the court the power to do both.
Far from being a power given in furtherance of the power to appoint an ad litem, the “other order” clause is a grant of discretion that enables the district court to protect the minor without appointing a guardian. That reading of rule 17(c) is not only plain on the face of the text, but is confirmed by our decisions[9] and those of *464 other circuits.[10] A leading treatise on federal procedure succinctly explains that “the court may either appoint a guardian ad litem or ‘make such other order as it deems proper for the protection of the infant or incompetent person.’ ” 4 JAMES W. MOORE ET AL„ MOORE’S FEDERAL PRACTICE § 17.21[3][b] (Matthew Bender 3d ed.) (emphasis added). Because it is used only as an alternative to the appointment of a guardian ad litem, the “other order” clause provides the majority no cover.
In short, then, the majority purports to rely on “express statutory authority” for the taxation of ad litem fees. Instead, it relies only on an implied power that it creates and then reads into a provision of the rules that can be invoked only when an ad litem is not appointed.
B.
The majority’s first rationale is equally unconvincing in its discussion of the government’s claim to sovereign immunity. Even assuming, arguendo, that ad litem fees may be taxed as costs under some combination of rules 17(c) and 54(d)(1), as the majority holds, those costs can not automatically be taxed against the government as the losing party in an action brought under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 2671 et seq. This is because the FTCA — as it is currently drafted — does not waive the government’s immunity from the taxation of costs and attorney’s fees.
Rather, costs and attorneys’ fees may only be taxed against the government to the extent that immunity is waived by the Equal Access to Justice Act (“EAJA”), 28 U.S.C. § 2412. See Sanchez v. Rowe, 870 F.2d 291, 296 (5th Cir.1989). The EAJA provides, in relevant part:
Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States.
§ 2412(a)(1). That language unambiguously provides that costs may be taxed against the United States only if they are among those enumerated in 28 U.S.C. § 1920. Although § 1920 lists a number of items of taxable costs, it says nothing about guardian ad litem fees.[11] As a result, even if the majority is correct in holding that ad litem fees may be taxed as costs under rule 17(c), sovereign immunity has not been waived and the costs may not be taxed against the government. Thus, the district court’s order taxing ad litem fees must be reversed.
To avoid this straightforward result— which is, evidently, so unpalatable to the majority that it will go to extraordinary lengths to avoid it — the majority takes two approaches. In the body of the opinion, it assesses sovereign immunity using the correct statute, but holds that “the inherent powers and responsibility under rule 17(c) to make such orders as the court deems *465 proper also constitute the alternative express statutory authorization to tax guardian ad litem fees as costs to meet the requirements of § 2412(a)(1) and defeat any associated claim of sovereign immunity by the nonprevailing government in an FTCA case.” Maj. Op. at 455, 458. In contrast, the majority’s footnotes take a completely different approach and argue that immunity is waived by the terms of the FTCA itself — or rather, by the terms of the FTCA as it stood more than a half century ago. See id. at 454 n. 11 & 457 n. 15 (relying on language in 28 U.S.C. § 931(a) that was repealed in 1948).
There are several serious flaws in the majority’s analysis. First, the majority mistakenly reads the opening phrase of § 2412(a)(1) as providing that there can be specific statutory exceptions to the definition of costs as used in the EAJA. Properly understood, that line provides something markedly different: that there are cases in which the government does not waive its immunity from the taxation of costs. Second, the court further mangles the English language by finding that rule 17(c) contains an “express” waiver of immunity, despite recognizing that it does not “specifically state” anything to that effect. Compare Maj. Op. at 455; with id. at 454. Third, the court gives the federal rules an impermissibly broad mandate, and then, fourth, ignores words of limitation that provide for exceptions to § 2412(a)(1) only as specified by “statute.” Finally, in what can only be seen as a concession that its analysis of § 2412(a)(1) fails to pass muster, the majority simply brushes that statute aside in preference for language that was removed from the FTCA in 1948 and has since been replaced by other statutes.
1.
To begin with, the entire premise of the majority’s discussion of sovereign immunity is utterly flawed, because it is directed at proving that ad litem fees fit a nonexistent exception to the EAJA. This is a minor point, however, so I will not belabor it.
The court claims to find, in rule 17(c), a specific statutory exception to § 2412(a)(l)’s limited waiver of immunity. Even if the court could show that its exception is both specific and located in a statute — something it cannot do, as explained in sub-parts 2 through 4, infra — it would not support the conclusion reached by the majority.
The majority flatly misreads § 2412(a)(l)’s opening clause: “Except as otherwise specifically provided by statute.” Properly understood, those words do not mean that there are instances in which costs may be awarded against the United States even though they are not specified in § 1920. To the contrary, the statute’s definition of costs as being those items that are enumerated in § 1920, but not including attorney’s fees, is absolute.
Instead, the phrase “Except as otherwise specifically provided by statute” only modifies the statement that “a judgment for costs ... may be awarded to the prevailing party in any civil action brought by or against the United States.” It provides that there may be instances in which costs are not recoverable against the United States, even though they are among those enumerated in § 1920 and are not attorneys fees.[12] The exception refers only to *466 the subject and predicate of the sentence: the combined statement that a judgment for costs may be awarded against the United States. It does not create an exception to the definition of costs as items that are “enumerated in § 1920 of this title, but not including the fees and expenses of attorneys.”
So, the majority’s claim that it has identified a specific, statutorily grounded exception to § 2412(a)(1) is immaterial: any such exception can serve only to prevent the taxation of costs; it can not serve to permit the taxation of things that are not costs.
2.
The court’s second mistake — identifying a putative exception to § 2412(a)(1) and calling it “specific” — is far worse, and it is one that should by now seem familiar. Even assuming, arguendo, that the EAJA allows for exceptions to the definition of the word costs as used in § 2412(a)(1), rule 17(c) does not constitute a “specific” exception to the government’s limited waiver of immunity.
The term “specifically” means “with exactness and precision: in a definite manner.” Webster’s Thied New Int’l DictionaRY 2187 (Merriam-Webster 1986). Again, because rule 17(c) says nothing at all about guardian ad litem fees, it does not “specifically provide” for a waiver of the government’s immunity from their taxation.
Even if the “other order” clause in rule 17(c) is held out as the portion of the rule that provides for a waiver of immunity,[13] it fails to do so specifically. That clause only says generally that the court may make other orders; it says nothing specific about what those orders may be. It therefore provides no exception to § 2412(a)(l)’s general rule that costs may not be taxed against the government unless they are enumerated in § 1920.
This is not merely a question of the majority’s ignoring the plain meaning of the word “specific” in its interpretation of § 2412(a)(1). Even absent the EAJA’s express requirement that exceptions to its terms be “specific,” the same result is dictated by “the traditional principle that the Government’s consent to be sued must be construed strictly in favor of the sovereign, and not enlarge[d] ... beyond what the language requires.” United States v. Nordic Village, Inc., 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (internal quotations omitted). “Waivers of the Government’s sovereign immunity, to be effective, must be unequivocally expressed.” Id. (quotations omitted).[14]
No matter how much the majority tries to contort the meaning of rule 17(c), there is no sense in which it either “specifically,” “explicitly,” “expressly,” “clearly,” or “unequivocally” waives sovereign immunity from the taxation of ad litem fees as court costs. The majority takes the opposite to our ordinary approach and finds a waiver of immunity in a provision of the federal rules that is completely silent on the subject.
This impliedly-express waiver of sovereign immunity flunks even the most lenient understanding of the clear statement rule. Its presence in an en banc opinion can serve no purpose but to throw our *467 entire sovereign immunity jurisprudence into chaos.
3.
The next flaw in the majority’s analysis of sovereign immunity is its contention that rule 17(c) is a statute. See Maj. Op. at 454. The majority recognizes, of course, that even a specific waiver of immunity is ineffective as an exception to the EAJA unless it is “provided by statute.” 28 U.S.C. § 2412(a)(1). The majority— citing only a single district court as authority — finds that rule 17(c) fits this description.[15]
The federal rules are, of course, part of federal law, and we often give them the same effect as statutes.[16] The Rules Enabling Act even has an abrogation clause that provides “[a]ll laws in conflict with [the] rules shall be of no further force or effect after such rules have taken effect.” 28 U.S.C. § 2072(b). So, to the extent the majority argues that the federal rules have “the imprimatur of Congress” such that they are considered laws, I fully agree. See Maj. Op. at 454.
Nevertheless, one of the critical differences between the federal rules and statutes is that the former are restricted to certain limited topics. The Rules Enabling Act delegates authority to the Supreme Court only to “prescribe general rules of practice and procedure.” 28 U.S.C. § 2072(a). Moreover, it specifically provides that “[s]ueh rules shall not abridge, enlarge or modify any substantive right.” 28 U.S.C. § 2072(b).
The Rules Committee can no more validly waive the United States’ sovereign immunity than this court can. It lacks the authority to speak on behalf of the United States in its capacity as a sovereign party to a lawsuit. If rule 17(c) said what the majority thinks it says, it would exist in violation of the limited grant of authority under which it was enacted.
The Supreme Court addressed this issue in United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), and held:
[NJothing in the new rules of civil practice ... authorizes the maintenance of any suit against the United States to which it has not otherwise consented. An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction and the Act of June 19, 1934 ... authorizing this Court to prescribe rules of procedure in civil actions gave it no authority to modify, abridge or enlarge the substantive rights of litigants or to enlarge or diminish the jurisdiction of federal courts.
Id. at 589-90, 61 S.Ct. 767.
The majority responds with a truism, observing that the federal rules apply to FTCA actions. See Maj. Op. at 454 n.ll. Of course they do — neither I nor the government contends otherwise. Indeed, if the federal rules did not apply to FTCA actions, our problems would be greater still, because the district court would have lacked authority even to appoint the guardian under rule 17(c), let alone to provide for his compensation. Either way, *468 that contention is entirely beside the point, because the applicable rules not only fail to say that they waive the government’s immunity, but they lack the capacity to do so in any event.
4.
There is still another problem with the majority’s use of a federal rule to effect a waiver of immunity. Again, conceding that the rules apply to FTCA cases, and assuming for the moment that the rules are capable of waiving the government’s immunity, there remains the problem of whether the rules fit the majority’s identified exception to § 2412(a)(1). The majority ignores the fact that Congress chose only to use the word “statute,” and not “rule,” when it provided that there may be exceptions to the EAJA. Federal law is rife with instances in which the two terms are held out as independent legal concepts.[17] They have independent meanings, and as a result I cannot read Congress’s choice of the the word “statute” in § 2412(a)(1) as including both traditional statutes and the federal rules. Rather, Congress’s use of the word “statute” signals a conscious decision to limit the sphere of possible exceptions to the EAJA to laws drafted by Congress and signed by the President’.
Even rule 54(d)(1) — an interpretation of which is ostensibly at the heart of the majority’s opinion — distinguishes between the two terms: “Except when express provision therefor is made either in a statute of the United States or in these rules.... ” Fed. R. Civ. P. 54(d)(1). That choice of words is almost identical to the first line of § 2412(a)(1), but for one omission: The EAJA permits exceptions only “as otherwise specifically provided by statute.” 28 U.S.C. § 2412(a)(1).[18]
If Congress had wished, it could have provided that exceptions to the EAJA may be “specifically provided by statute or rule,” just as the Rules Committee provided when drafting rule 54. It did not, however, and as a result this court cannot hold out rule 17(c) as the source for an exception to the EAJA.
For those reasons, rule 17(c) does not waive the government’s immunity from the taxation of costs that are not enumerated in 28 U.S.C. § 1920. Not only does rule 17(c) fail “specifically [to] provide” an exception to § 2412(a)(1), it is also not a statute, and it was promulgated under a grant of authority that does not include the power to waive the government’s substantive right to be free from suit.
*469 5.
Finally, there is the majority’s claim that the FTCA, rather than § 2412(a)(1), is the relevant statute for purposes of assessing sovereign immunity. See Maj. Op. at 454 n.11, 457 n.15.[19] That is indeed a tough claim to make, given that the FTCA’s waiver of immunity speaks only in terms of “tort claims,”[20] and there is a separate statute that has no purpose other than to specify the terms on which costs may be taxed against the government. Compare 28 U.S.C. § 2674, with § 2412(a)(1). “It is an elementary- tenet of statutory construction that ‘[wjhere there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one.’ ” Guidry v. Sheet Metal Workers Nat’l Pension Fund, 493 U.S. 365, 375, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (quoting Morton v. Mancari, 417 U.S. 535, 550-51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). Because § 2412 is by far the more specific statute on the topic of the government’s liability for costs, it controls over any inferences that may be drawn from § 2674’s broad statement to the effect that the government is liable for “tort claims” on the same terms as other parties.
To refíne its view of the FTCA into a statement that might reasonably control the specific terms of § 2412(a)(1), the majority points to language that was removed from the FTCA in 1948. See Maj. Op. at 457 n.15. Relying on United States v. Yellow Cab, 340 U.S. 543, 547 n. 4, 71 S.Ct. 399, 95 L.Ed. 523 (1951), the majority then argues that the current version of the FTCA should be read as continuing to carry out the policies of the repealed statute 28 U.S.C. § 931(a) (1946) (quoted in Yellow Cab, 340 U.S. at 547 n. 4, 71 S.Ct. 399.).
The majority reads far too much into Yellow Cab, which specified that it was reading the old and new statutes as being consistent with one another because the provisions material to its dispute had been largely reenacted in § 2674, with only minor changes in “phraseology.” Id. In contrast, the provisions relevant to the present dispute were not reenacted in the FTCA in any form. Yellow Cab therefore provides no basis for the majority’s conclusion that we are bound by repealed language that supposedly undergirds § 2674, rather than the plain (and valid) language of § 2412(a)(1).
Even if Yellow Cab were not distinguishable on that basis, it still would not provide support for the majority’s analysis. Yellow Cab was decided a mere three years after the FTCA’S revision, and the Court needed only to reconcile the pre- and post-amendment versions of the same statute. Half a century later, however, we are required also to consider the significance of *470 the statutes Congress has enacted in the intervening years:
At the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings. The “classic judicial task of reconciling many laws enacted over time, and getting them to ‘make sense’ in combination, necessarily assumes that the implications of a statute may be altered by the implications of a later statute.” United States v. Fausto, 484 U.S. [439, 453, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) ]. This is particularly so where the scope of the earlier statute is broad but the subsequent statutes more specifically address the topic at hand. As we recognized recently in United States v. Estate of Romani, [523 U.S. 517, 530-31, 118 S.Ct. 1478, 140 L.Ed.2d 710 (1998),] “a specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended.”
Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 143, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).
Even if Yellow Cab requires us to assume that the post-amendment FTCA originally applied to the taxation of costs, we would still be required to challenge that assumption when it became inconsistent with intervening statutes. Because Congress drafted a new statute that directly addresses the subject of costs, we cannot just ignore it in preference for language that was repealed in 1948.[21]
The irony in the majority’s position is that that position is likely to end up being even more favorable to the government than the one I am advocating. Applying the court’s holding to a far more common problem — a request for the payment of attorney’s fees — it must also be the case that § 2674 of the FTCA continues to embody the relevant provisions of the old statute, § 931(a). That statute flatly prohibited courts from awarding attorney’s fees against the government in a tort case. See Yellow Cab, 340 U.S. at 547 n. 4, 71 S.Ct. 399. The EAJA purports to soften that restriction by allowing an award of attorney’s fees in some tort cases under § 2412(b), see, e.g., Stive v. United States, 366 F.3d 520, 521 (7th Cir.2004), while still refusing to require that they be imposed, even in cases where the government takes an unjustified position, see § 2412(d)(1)(A).
Under the majority’s holding, courts will be required to look to the repealed language of § 931(a), and not to § 2412, to determine whether attorney’s fees may be allowed against the government in an FTCA case. Because § 931(a) prohibits those awards in all tort cases, the majority’s holding ultimately will inure to the great detriment of plaintiffs seeking redress for government wrongs.
The majority cannot so simply escape the limitations imposed on the waiver of sovereign immunity. Because guardian ad litem fees are not listed in § 1920, they do not fit within § 2412(a)(l)’s requirements. We should reverse on this basis as well.
C.
Finally, even if the majority correctly holds that ad litem fees may be taxed against the government under rule 17(c), it errs in merely affirming rather than remanding. A remand is appropriate, be *471 cause the district court used rule 54(d)(1), not rule 17(c), as the basis for its order taxing ad litem costs.
The majority’s own opinion provides district courts the authority to determine
[wjhether the compensation payable to the guardian ad litem will be treated (1) as a court cost to be taxable against the nonprevailing party or (2) as an expense to be payable out of any funds recovered by or payable to the minor or incompetent person on whose behalf the guardian ad litem was appointed.
Maj. Op. at 454. In so doing, the opinion arms district courts with a level of discretion in applying rule 17(c) that is more akin to that found in rule 53(h)(2) than in rule 54(d)(1). The court need not tax the full amount of the costs against the losing party, as rule 54(d) would require, but instead may allocate the burden among the parties in the manner it finds most equitable.
Nevertheless, by affirming instead of remanding, the majority denies this discretion to the very court for which it was created: the district court in the instant case. There is no doubt that the district court relied exclusively on rule 54(d) in crafting its order taxing costs against the government: This court’s decisions unambiguously have held that the power to tax ad litem fees derived from rule 54(d);[22] the ad litem moved to have his fees taxed against the government as costs pursuant to rule 54(d); and the district court approved the order in reliance on our duPont line of cases.
The district court had no idea that it was empowered to distribute the burden of the ad litem’s fees on any party other than the government. Nor could it have: Today’s decision is the first to provide that the power to tax costs stems from rule 17(c), not rule 54(d). Had the district court known of this power, it may well have found it more equitable to require the minor, for whom the ad litem was appointed, to apply some portion of his $4,083,103.66 recovery toward the ad li-tem ’s $46,299 fee.
“When law changes in unanticipated ways during an appeal ... this court will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard.” Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 188 F.3d 278, 282 (5th Cir.1999). “The motivation of this rule is fairness: to prevent injustice to a party who had no reason to expect a changed rule at the time of trial.” Id.
Even accepting the majority’s eminently flawed opinion that ad litem fees may be taxed as costs under rule 17(c), the appropriate remedy is to remand so that the district court can apply its newly-created powers under rule 17(c) to determine the most equitable means of allocating the ad litem’s fees among the parties as it sees fit.
II.
The majority also affirms on the “alternative” ground that a court appointed guardian ad litem is one of the items of taxable costs enumerated by Congress in 28 U.S.C. § 1920. Specifically, the majority finds that guardians ad litem are court appointed experts under § 1920(6).
It is notable that the majority repeatedly defends its view as “reasonable,” but never as correct. See Maj. Op. at 454, 457. That reluctance is not particularly surprising: Even the plaintiffs concede that the *472 majority’s reading is incorrect, and they disavow any reliance on it. That concession ordinarily would keep this court from even entertaining the argument, because a “party’s concession of an issue means the issue is waived and may not be revived.” Smith v. United States, 328 F.3d 760, 770 (5th Cir.2003).
But even if one joins the majority in ignoring the appellees’ concession, the majority’s first “alternative” holding is manifestly erroneous, both as an interpretation of the statute and as an application of that statute to the facts of this case. The majority’s strained reading of the text also violates the maxim that we construe waivers of sovereign immunity narrowly and in favor of the sovereign.
A.
This court interprets statutes according to their plain meanings. Conn. Bank of Commerce v. Republic of Congo, 309 F.3d 240, 260 (5th Cir.2002). “In determining a statute’s plain meaning, we assume that, absent any contrary definition, ‘Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning.’ ” In re Greenway, 71 F.3d 1177, 1179 (5th Cir.1996) (quoting Pioneer Inv. Serv. v. Brunswick Assoc., 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)) (internal quotation marks omitted).
The plain meaning of the phrase “court appointed experts” in § 1920(6) is that it is a reference to experts appointed under Federal Rule of Evidence 706. The rule likewise is titled “Court Appointed Experts,” and courts consistently refer to individuals appointed under that rule by the same name. In addition to this common usage, the term “court appointed expert” is in fact defined as synonymous with “impartial expert. An expert who is appointed by the court to present an unbiased opinion.... Fed.R.Evid. 706.” BlaCk’s Law Dictionary 600 (7th ed.1999).
This view is reinforced by legislative history. The House Committee report provides that § 1920(6) is an “express reference to the taxation of the compensation of a court appointed expert, as permitted by Rule 706 of the Federal Rules of Evidence.”[23] H.R.Rep. No. 95-1687, 95th Cong., 2d Sess. 13, reprinted in 1978 U.S.C.C.A.N. 4652, 4664. As a result, the plain meaning of “court appointed experts,” as used in § 1920(6), is a specific reference to experts appointed under rule 706 and does not include guardians ad litem appointed under rule 17(c). Cf. Fed. R.Evtd. 706; Fed.R.Civ.P. 17(c).
In contrast, the court posits that guardians ad litem fit the ordinary, contemporary, and common meaning of the term “court appointed expert,” just because they “liaise with the court and are charged with the important duty of providing their insight as to how the judicial process is or is not comporting with the best interests of the minor.” Maj. Op. at 457. That claim is unconvincing, for the same vague description could be applied to a number of parties that § 1920 otherwise references by name.
For example, interpreters are selected and appointed by the “presiding judicial officer” at trial, and there is no question but that they apply their skills toward a discrete task that is essential to fair judi *473 cial administration. Cf. 28 U.S.C. § 1827. The same is true of court reporters. Federal law provides that “[e]ach district court of the United States ... shall appoint one or more court reporters,” 28 U.S.C. § 753, and theirs is certainly a unique skill that is applied to a discrete problem in trial management.
Yet, despite the “expert” status of reporters and interpreters under the majority’s new rule, their fees receive individualized mention in § 1920(2) and (6). The majority’s reasoning therefore ignores the maxim that courts should avoid an interpretation of a statute that “renders some words altogether redundant.” Gustafson, 513 U.S. at 574, 115 S.Ct. 1061.[24]
Accordingly, it takes something more than a court appointment and responsibility over an “important duty” to qualify as a court appointed expert within the meaning of § 1920(6). In this regard, it is telling that an ad litem need not even be an expert to qualify for appointment under rule 17(c).
“Qualification cannot occur in guardian ad litem situations because no recognized area of general expertise with regard to ‘custody’ or ‘child placement’ exists.” R. Lidman & B. Hollingsworth, The Guardian ad Litem in Child Custody Cases: the Contours of Our Judicial System Stretched Beyond Recognition, 6 Geo. Mason L.Rev. 255, 275 (1998). No matter how valuable are the skills possessed by an ad litem, the legal system does not generally refer to them as “experts.”
I cannot presume that the lone exception to this practice is Congress’s choice of the phrase “court appointed experts” in § 1920(6), a phrase that has a far more natural — and limited — connotation as a reference to rule 706 experts.[25] However valuable or important the duties of an ad litem are, they do not automatically make someone appointed to perform that function a “court appointed expert.”
The majority’s interpretation also violates the interpretive canon that “where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.” Wash. State Dep’t of Social & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 384, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003). Section 1920 is quite specific in providing for the taxation of costs incurred by a particular individual: The clerk, marshals, court reporters and interpreters are all specifically provided for. Moreover, these descriptions refer to the officials’ job titles, not merely to the attributes they bring to that position — the list is, in other words, taxonomical, not descriptive.
Against that backdrop, the ordinary presumption is that the phrase “court appointed expert” is a similarly specific reference to the title of a court official, not a broad description of the skill set possessed by an individual who serves the court. It means the very persons who ordinarily would be referred to as “court appointed experts,” not those who were appointed by the court and generally could be described as possessing some measure of expertise. Because rule 706 experts ordinarily are referred to as “court appointed experts,” they fit within the statute; guardians ad *474 litem appointed under rule 17(c) do not. Cf. Fed.R.Evid. 706; Fed.R.Civ.P. 17(c).
B.
Even if the majority correctly holds that guardians ad litem could be “experts” within the meaning of § 1920(6), it would be absurd to apply that holding to the present case. I do not mean to denigrate the services of the ad litem in this case, who, by all accounts, performed his job competently and diligently. Nevertheless, the circumstances of his appointment as an ad litem fall far short of anything resembling the qualification and appointment of an expert.
The Gaddises originally moved for the appointment of an ad litem and recommended that this person be designated to serve in that capacity. Their summation of his qualifications reads, in its entirety:
Plaintiffs would respectfully request that attorney George Bean be appointed as Ad Litem for the Minor. Mr. Bean is familiar with the general facts of the case and has expressed his willingness to serve as ad litem pending approval by the Court.
The possession of a general familiarity with a subject, and a willingness to serve, do not make someone an expert in that field. Because this particular ad litem possessed no expertise and was not appointed to be an expert, there is no basis for the majority’s conclusion that his fees may be taxed against an adverse party on the theory that they are costs incurred by an “expert.”
C.
The majority asserts that this “alternative” holding exists free and clear of any sovereign immunity concerns, because a finding that guardians ad litem are enumerated within § 1920 is tantamount to a finding that the government has waived its immunity in § 2412(a)(1). See Maj. Op. at 457. That is only half right. The court is correct to note that the EAJA waives immunity for those items that are “enumerated in section 1920.” 28 U.S.C. § 2412(a)(1). But, what the majority fails to acknowledge is that its opinion is as much an interpretation of § 2412(a)(1) as it is of § 1920. This is because the majority must identify the meaning of the words “as enumerated in section 1920” before finding that the government has waived its immunity for the taxation of costs.
As a result, the majority’s view that it can adopt any possible interpretation of § 1920, no matter how strained or tenuous, violates the maxim that waivers of immunity are not to be enlarged “beyond what the language requires.” Nordic Village, 503 U.S. at 34, 112 S.Ct. 1011; Williams, 514 U.S. at 531, 115 S.Ct. 1611. Even if it is possible to interpret § 1920 in the manner adopted by the majority — because nothing in the statute conclusively forecloses its view — that is not enough. There is nothing in either § 1920 or § 2412(a)(1) that even comes close to compelling the majority’s view that the government has waived its immunity from the taxation of guardian ad litem fees as costs.
III.
I now come to the majority’s third, and final, explanation for its self-described “fair and proper” result. Maj. Op. at 459. In this next “alternative” version of its holding, the majority throws all prior arguments out the window, and holds that the case is much ado about nothing. Because we have previously reached the same result without considering the arguments presented by the government in this appeal, we have obviously rejected them, says the majority, so we shouldn’t waste *475 time today considering their merits.[26]
The logic of that approach is overwhelming. Surely it is not better that we leave the tough questions to a three-judge panel that did not consider the question, than to the collective wisdom of sixteen judges who have the benefit of having the issued briefed and orally argued. The majority’s approach serves no purpose but to absolve the en banc court of the responsibility for reaching the relatively obvious, if unpalatable, conclusion that the government’s position is the correct one.
This final “alternative” holding rests on the proposition that Crawford Fitting is inapposite to the question whether guardian ad litem fees may be taxed as costs. To reach its conclusion, the majority first observes that we have favorably cited the duPont line of cases for several years after Crawford Fitting and thereby have upheld the right of district courts to tax ad litem fees as costs under rule 54(d)(1). See Maj. Op. at 457 & n.16.
Further, the majority reasons, Crawford Fitting has no relevance to the present dispute, because “[njeither the term ‘guardian ad litem’ nor the phrase ‘guardian ad litem fees’ appears anywhere in the Supreme Court’s decision in Crawford Fitting.” Id. at 458. Lastly, the majority reasons, there are a variety of states in which “state courts applying their respective state statutes” have found that ad litem fees are taxable items of cost; as a result, federal statutes must provide for the same result. Id.
The only inference to be drawn from the fact that our recent cases have taxed ad litem fees without mentioning Crawford Fitting, is that the parties in those cases did not make the same argument that the government has put forward here. Because Dickerson, 280 F.3d at 478; Lebron, 279 F.3d at 332; and Gibbs, 210 F.3d at 506, make no mention of Crawford Fitting, they do not stand for the proposition that the government’s arguments based upon that case are without merit. To the contrary, the only significance of those cases is that they bound the original panel in this case to a result that could not be squared with Crawford Fitting. In other words, we took this case en banc to consider whether those decisions are in error; it is an insufficient answer merely to observe that those panels reached a decision.
Likewise, there is no significance to the fact that Crawford Fitting fails to mention the term “guardian ad litem.” This is because the case creates a rule of exclusion, not inclusion. In Crawford Fitting, the Court specifically rejected the view that “ § 1920 does not preclude taxation of costs above and beyond the items listed,” as well as the view that “Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920.” Crawford Fitting, 482 U.S. at 441, 107 S.Ct. 2494.
Instead it held, in no uncertain terms, that costs are taxable under rule 54(d) only if they are among those items that Congress specifically enumerated in 28 U.S.C. § 1920. Indeed, “§ 1920 defines the term ‘costs’ as used in rule 54(d),” and “no reasonable reading of these provisions together can lead to [the] conclusion” that items of cost may be taxed even though they are not enumerated in § 1920.[27] Id. *476 That the Court reached this result in the context of finding that expert witness fees may not be taxed above the amount specified in 28 U.S.C. §§ 1920 and 1821(b) is of no moment. If the Court instructs lower courts that they may tax only the six items listed in § 1920, and then holds that they may not tax a seventh item, we are bound to apply that decision to say “nor this eighth, nor this ninth, nor this tenth item either.”
Outside the guardian ad litem context, we have applied Crawford Fitting to hold that a federal district court may not tax, as costs, expenses incurred in preparing videotaped depositions, because that item is not found in § 1920’s list. Mota v. Univ. of Tex. Houston Health Science Ctr., 261 F.3d 512, 529-30 (5th Cir.2001). Likewise, video technician fees are not taxable under § 1920, nor are the production of “blow-ups” of exhibits. Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir.1993). In the closest analogy to the present case, we held that a mediator’s fees are not covered by § 1920 either and, as a result, may not be taxed as costs in the wake of Crawford Fitting. Mota, 261 F.3d at 530.[28]
The majority also errs in claiming that its conclusion is reinforced by the practice in state courts. Its own citations reveal that ad litem fees are taxable costs in those states only because state statutes or procedural rules specifically provide for that result in a way that the federal rules and statutes do not.
As I have already shown, the Alabama, Mississippi, North Carolina, Tennessee, and Texas procedural rules contain specific provisions stating that ad litem fees may be taxed as costs. In addition, the majority relies on several state statutes, evidently in the hope that they will compare favorably to § 1920. They do not. The Illinois statute cited by the majority provides: “A guardian ad litem or special administrator is entitled to such reasonable compensation as may be fixed by the court to be taxed as costs in the proceedings and paid in due course of administration.” 755 III. Comp. Stat. Ann. 5/27-4 (West 2004). Similarly, the Michigan statute relied on by the majority provides: “The guardian ad litem may be allowed reasonable compensation by the court appointing him, to be paid and taxed as a cost of the proceedings as directed by the court.” Mioh. Comp. Laws Ann. § 600.2045(2) (West 2004).
Ml of these states expressly provide for the compensation of guardians ad litem as a taxable court cost, something federal law flatly does not do. “[I]t is a general rule that in actions at law, as distinguished from suits in equity, costs may not be allowed in the absence of statute or rule of court authorizing such relief.” Van Ingen, supra, 30 A.L.R.2d 1148 § 2. “[I]n many jurisdictions the courts have been expressly authorized by statute to tax as costs fees for the services of guardians ad li-tem.” Id.
It is up to Congress to decide whether guardian ad litem fees may be taxed as costs. In its present form, the statute Congress enacted to address that topic fails to enumerate guardian ad litem fees as a taxable item of cost, and, as a result, ad litem fees may not be taxed under rule *477 54(d), any more than can the expenses disallowed in Mota, Coats, and Brisco-Wade. If Congress chooses, it can fix this result by amending § 1920; unless and until it does so, Crawford Fitting precludes district courts from taxing guardian ad litem fees.
Although I will not repeat all the arguments I make in part I.B, supra, sovereign immunity also bars the result advocated by the majority in this “alternative” holding. This would be so even if Crawford Fitting had never been decided, or had been decided in a manner consistent with that case’s dissenting opinion and today’s majority opinion. Regardless of the courts’ power to tax costs under rule 54(d)(1), the government has waived its immunity from costs only as enumerated in § 1920. See 28 U.S.C. § 2412(a)(1).
rv.
One sentence in the majority opinion sums up the real reason for its decision to affirm the district court:
While we recognize the underlying treatment the Supreme Court gave to the interplay between Rule 54(d) and § 1920 in Crawford Fitting, we are reluctant to and thus do not apply any such proscription here to the taxation of guardian ad litem fees as costs....
Maj. Op. at 457-58 (emphasis added). Reluctance to reach a result the majority perceives as unpalatable is no excuse for ignoring controlling Supreme Court precedent or for re-writing rules and statutes. Those powers properly lie with others. I therefore respectfully dissent.

. “Doublethink means the power of holding two contradictory beliefs in one's mind simultaneously, and accepting both of them.... The process has to be conscious, or it would not be carried out with sufficient precision, but it also has to be unconscious, or it would bring with it a feeling of falsity and hence of guilt.” G. Orwell, Nineteen Eighty-Four 176 (1949).

. This is not the first time an en banc majority of this court has reached such a perplexing result. See Kelly v. Lee’s Old Fashioned Hamburgers, Inc., 908 F.2d 1218, 1222 (5th Cir.1990) (en banc) (Smith, J., dissenting) ("[T]he presence of the word 'express' should be enough of a clue that that word, rather than the word 'implied,' is what in fact was meant in the promulgation of [Rule 54(b) ].").

. See Crawford Fitting, 482 U.S. at 445, 107 S.Ct. 2494 (requiring "explicit statutory ... authorization” for the taxation of costs not enumerated in 28 U.S.C. § 1920(6)).

. See Maj. Op. at 454 (stating that "[i]t is precisely due to such legitimate and practical reasons that district courts must also have the inherent authority and discretion to tax guardian ad litem fees as costs against non-prevailing parties,” and relying on a decision that describes rule 17(c) as "silent on the subject”).

. See also Black's Law Dictionary 601 (7th ed.1999) {“express, adj. Clearly and unmistakably communicated; directly stated.”); Merriam-Webster’s Collegiate Dictionary 645 (Merriam-Webster 1998) ("la: directly, firmly, and explicitly -stated, b: Exact, Precise.”)

. Crawford Fitting, 482 U.S. at 445, 107 S.Ct. 2494, speaks in terms of "explicit” authority. "Explicit” means .“characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied.” Webster's Third New Int’l Dictionary 801 (Merriam- *462 Webster 1986). The power identified by the district court no more fits this definition than it does that of the word "express.”

. Before its revision, rule 53(a) — which was titled "Appointment and Compensation”— provided that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties ... as the court may direct.” Fed.R.Civ.P. 53(a) (West 2003).

. See also N.C. R. Civ. P. 17(b) (providing that the court "may appoint some discreet person to act as guardian ad litem ... and fix and tax his fee as part of the costs”); Tenn. R. Civ. P. 17.03 (“The court may in its discretion allow the guardian ad litem a reasonable fee for services, to be taxed as costs.”); Tex.R. Civ P. 173 ("the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs.”). Further examples can be found in part III of this dissent, addressing the majority's second "alternative” to its main holding.

. See, e.g., Roberts v. Ohio Cas. Ins. Co. 256 F.2d 35, 39 (5th Cir.1958) (providing that a district court should usually appoint an ad litem, but may instead "after weighing all the circumstances, issue such order as will protect the minor in lieu of appointment of a guardian ad litem ... and may even decide that such appointment is unnecessary”); Adelman ex rel. Adelman v. Graves, 747 F.2d 986, 988-89 (5th Cir.1984) (same).

. See, e.g., Gardner by Gardner v. Parson, 874 F.2d 131, 140 (3d Cir.1989) (stating that “under Rule 17(c), a court may appoint a guardian, or it may decline to do so if the child’s interests may be protected in an alternative manner.”); Genesco, Inc. v. Cone Mills Corp., 604 F.2d 281, 285 (4th Cir.1979) (Rule 17(c) requires the court either to appoint a guardian "or take other equivalent protective action”).

. I recognize that one of the majority's "alternative” holdings is that § 1920 enumerates guardian ad litem fees as a taxable cost. I refute that claim in part II. For present purposes, however, my discussion is focused only on the majority's first rationale, in which it posits that rule 17(c) specifically provides both that ad litem fees may be taxed as costs, and that they may be taxed against the government under § 2412(a)(1).

. See also G. Van Ingen, Allowance of Fees for Guardian ad Litem Appointed for Infant Defendant, as Costs, 30 A.L.R.2d 1148, 1953 WL 8032 § 1 (Whitney 2004) ("[T]he governing statutes or rules of court generally allow costs in favor of the prevailing party to the litigation. However, the statutes sometimes recognize the propriety of denying costs in *466 favor of the prevailing party, under the proper circumstances. ”)

. An unsupportable claim, for the reasons I discuss in part I.A.2, supra.

. See also United States v. Williams, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995) ("[W]e may not enlarge the waiver beyond the purview of the statutory language.”)

. See Maj. Op. at 454 (citing ICG Communications, Inc. v. Allegiance Telecom, 211 F.R.D. 610, 613 (N.D.Cal.2002)). The ICG Communications case does not even stand for the proposition attributed to it by the majority: that the term “statute” is synonymous with, or at least includes, the federal rules.

. See, e.g., United States v. Wilson, 306 F.3d 231, 236 (5th Cir.2002) (finding that "Congress retains an integral, albeit passive, role in implementing any rules drafted by the Court,” and that the federal rules can have the same operative effect as statutes).

. See, e.g., Crawford-El v. Britton, 523 U.S. 574, 594, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (stating that "[n]either the text of § 1983 or any other federal statute, nor the Federal Rules of Civil Procedure, provide ...”); Jackson v. Stinnett, 102 F.3d 132, 134 (5th Cir.1996) (discussing the Rules Enabling Act and finding that "[ajlthough Congress has authorized the Court to exercise some legislative authority to regulate the courts ... [it] may at any time amend or abridge by statute the Federal Rules of Civil Procedure ... or other federal procedural rules promulgated under the Rules Enabling Act”) (internal citations omitted).

. Rule 11 is similar to rule 54 in that it also distinguishes between the terms "rule” and "statute.” It provides that pleadings need not be verified by affidavit "[e]xcept when otherwise specifically provided by rule or statute.” FedR.Civ.P. 11(a). Similarly, the Federal Rules of Bankruptcy Procedure provide that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides.” Fed. R. Bankr.P. 7054(b). The Federal Rules of Criminal Procedure also distinguish between themselves and statutes, providing that "[ejxcept as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings.” Fed.R.Crim.P. 53.

. That is a strange position for the majority to take, because the portions of the text to which those footnotes correspond discuss sovereign immunity' in the context of the correct statute, § 2412(a)(1), not the FTCA. See Maj. Op. at 454, 457. The majority's footnotes in no way clarify the manner in which rule 17(c) provides a specific exception to § 2412(a)(l)’s limited waiver of immunity; instead, they serve only further to muddy the waters. If the footnotes are correct, the discussion in the body of the majority opinion is wholly extraneous. At best, therefore, those footnotes constitute but another ''alternative” holding that can have no purpose except to provide false comfort to a majority that is already well aware of the dearth of support for its position.

. No one disputes that the government was not immune from the Gaddises’ underlying tort claim, and even the majority cannot bring itself to assert that the guardian's request for fees constitutes a "tort claim” against the United States.. Instead, the issue is only .whether the waiver of immunity with respect ■to the Gaddises’ claim also encompasses litigation costs incurred in the course of trial.

. It is also beyond cavil that the EAJA generally applies to tort suits against the government. One subsection of the act, § 2412(d)(1)(A), specifically exempts tort cases from the provision that mandates an award of attorney's fees against the government when it takes an unreasonable position at trial. No such exception would be necessary if the EAJA did not otherwise apply to tort claims brought against the government.

. See, e.g., duPont, 771 F.2d at 882 ("As an officer of the court, the expenses of a guardian ad litem are properly taxable as costs pursuant to Fed.R.Civ.P. 54(d).”).

. The majority dismisses that statement in a footnote, arguing that the inclusion of "court appointed experts” in § 1920 was such an afterthought that any explanation for its inclusion is presumptively unreliable. See Maj. Op. at 457 n.13. That observation leads, however, to the inverse of the majority’s conclusion. If indeed Congress paid little heed to its decision to include the fees of court appointed experts in § 1920, it is far more likely that the term is used in a familiar, as opposed to novel, way.

. The majority also sweeps into its fold masters appointed under rule 53, even though the rules independently provide a means for their compensation. See Fed.R.Civ.P. 53(h).

. At oral argument, the ad litem disclosed that this was his first time serving in that capacity. That he did so competently only underscores the fact that an ad litem can be a relative novice, and yet still satisfy all the requirements of the job.

. See Dickerson v. United States, 280 F.3d 470, 478 (5th Cir.2002); Lebron v. United States, 279 F.3d 321, 332 (5th Cir.2002); Gibbs v. Gibbs, 210 F.3d 491, 506 (5th Cir.2000). Those cases rely entirely on duPont, and they neither discuss the potential impact of Crawford Pitting on duPont nor address the issues raised in today's opinion.

. Any doubt concerning that result is removed by the subsequent statement, in W. Va. Univ. Hosp., Inc. v. Casey, 499 U.S. 83, 86, *476 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), that in Crawford Fitting the Court "held that [§§ 1920 and 1821] define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further.”

. See also Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir.2002) (holding that § 1920 does not authorize taxing mediation fees as costs).